**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

EDWIN PUGA,

                                   Plaintiff,

        v.                                       No. 11-CV-70
                                                   (TJM/CFH)

CELIA CHOTO, Correction Officer, Great Meadow
Correctional Facility; LAWRENCE PERRY,
Correction Officer, Great Meadow Correctional
Facility; RONALD LAMB, Correction Officer, Great
Meadow Correctional Facility; TIMOTHY LEMERY,
Correction Officer, Great Meadow Correctional Facility;

                                   Defendants.

_____

**APPEARANCES:**                        **OF COUNSEL:**

COOPER, ERVING & SAVAGE       KIMBERLY G. FINNIGAN, ESQ.
Attorneys for Plaintiff
39 North Pearl Street
Fourth Floor
Albany, New York 12207

HON. ERIC T. SCHNEIDERMAN      CATHY Y. SHEEHAN, ESQ.
Attorney General for the                    Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION & ORDER[1]

    Plaintiff <u>pro se</u> Edwin Puga (Puga"), an inmate currently in the custody of the New York

Department of Corrections and Community Services ("DOCCS") bring this action pursuant

_____

    [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

to 42 U.S.C. § 1983 alleging defendants violated his Eighth Amendment rights by subjecting him to excessive force.  Compl. (Dkt. No. 1).  In answering the complaint, the defendants pled, inter alia, the affirmative defense of failure to exhaust administrative remedies.  Dkt. No. 16.

On May 8, 2013 defendants filed a letter motion seeking a hearing to resolve the issue of Puga's exhaustion of administrative remedies.  Dkt. No. 37.  By text order dated August 16, 2013 the Honorable Thomas J. McAvoy, Senior United States District Judge, granted defendants' letter motion and referred the evidentiary hearing to this Court.  Dkt. No. 39.

This Court issued an order scheduling a hearing on the issue of exhaustion of administrative remedies for October 3, 2013.  Dkt. No. 40.  By letter motion filed September 19, 2013, Puga's appointed counsel asked that the exhaustion hearing be cancelled, or in the alternative, be delayed for sixty days in order to allow counsel to conduct discovery on the exhaustion issue.  Dkt. No. 43.  By text order dated September 24, 2013 the Court denied that motion.  Dkt. Sheet Entry dated 9/24/2013.

On October 3, 2013 an evidentiary hearing was conducted.  At the close of that hearing the Court reserved decision.  Hr'g Tr. at 87-88.

## I. Relevant Law

### A.  Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases.  Porter v. Nussle, 534 U.S. 516, 524

(2002); see also Woodford v. Ngo, 548 U.S. 81, 83 (2006).  This exhaustion requirement applies to all prison condition claims.  Porter, 534 U.S. at 532.  "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement."  Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999).  The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate.  Porter, 534 U.S. at 524.

Exhaustion for an inmate in DOCCS custody is generally achieved through Inmate Grievance Program ("IGP").  See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.1, et seq. (2012).  Allegations of staff harassment are subject to an expedited procedure whereupon the complaint is first reviewed by the Superintendent and only if it is not a bona fide claim will it be returned to the IGP for normal processing.  N.Y. COMP. CODES. R & REGS. tit. 7, § 701.8 (2012).  Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with the Central Office Review Committee ("CORC") and receive a response from the CORC prior to filing a federal lawsuit.  Torres v. Carry, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009); see also N.Y. COMP. CODES R. & REGS. tit. 7 § 701.5(d)(2)(ii) (2012) ("The CORC shall review each appeal, render a decision on the grievance, and transmit its decision . . . within 30 calendar days") (hereinafter " 7 N.Y.C.R.R. § 701.5").  Disagreement with the superintendent's decision in the expedited review also requires an appeal to the CORC.  N.Y. COMP. CODES. R & REGS. tit. 7, § 701.8 (g)–(h); see also Espinal v. Goord, 588 F.3d 119, 125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC).  Exhaustion must precede filing a lawsuit.  Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed therefore is insufficient."), abrogated in part on other grounds by

3

Porter, 534 U.S. 516.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has

recognized that "certain caveats apply." Ruggiero v. Cnty. of Orange, 467 F.3d 170, 175

(2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)). The failure to

exhaust may be excused in limited circumstances.

> In determining whether such an exception is applicable, a district
> court must apply a three-part test: First, the court must
> determine whether administrative remedies in fact were
> available to the prisoner. Second, if such remedies were
> available, the court must determine whether the defendants' own
> actions inhibited the inmate's exhaustion of administrative
> remedies, thereby requiring that one or more of them be
> equitably estopped from raising the failure to exhaust as a
> defense. Finally, if administrative remedies were available and
> the defendants are not estopped, the court must determine
> whether any special circumstances justify the prisoner's failure
> to comply with administrative procedural requirements.

Gayle v. Benware, 716 F. Supp. 2d 293, 298 (S.D.N.Y. 2010) (internal citations omitted);

see generally Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (articulating above

test as the appropriate method for excusing failure to exhaust given the present state of all

Second Circuit opinions). "Unavailability of administrative remedies . . . is an objective

[test]: that is, would a similarly situated individual of ordinary firmness have deemed them

unavailable." Kasiem v. Switz, 756 F. Supp. 2d 570, 576–77 (S.D.N.Y. 2010) (internal

quotation marks and citations omitted). Estoppel occurs when "an inmate reasonably

understands that pursuing a grievance through the administrative process will be futile or

impossible . . . [as evidenced by] prison officials' threats, beatings, . . . denials of grievance

forms, or by other misconduct deterring [the inmate] from fulfilling the requisite procedure."

Id. at 577 (internal quotation marks and citations omitted). If an inmate claims estoppel and

4

continues to file complaints and grievances, the exception is inapplicable.  Id.  Special

circumstances exist when an inmate's failure to comply can be justified.  Id. (citations

omitted).  Justification is found "by looking at the circumstances which might

understandably lead usually uncounselled prisoners to fail to grieve in the normally required

way."  Giano v. Goord, 380 F.3d 670, 678 (2d Cir. 2004) (citations omitted).


## B. The Inmate Grievance Process

New York State law provides a three tier inmate grievance procedure which is applicable

to Puga's claims.  See N.Y. CORRECT. LAW § 139; N.Y. COMP. CODES R. & REGS. tit. 7, §

701.1 et seq.[2]  Where the grievance involves allegations of employee excessive force, as

alleged by Puga, there is an expedited administrative process.  N.Y. COMP. CODES R. &

REGS. tit. 7, § 701.8.  In such cases the superintendent of the facility is required to order an

investigation and render a decision within twenty-five (25) days.  Id. § 701(a) - (f).  If the

superintendent fails to respond within the required twenty-five (25) time limit the inmate may

appeal his grievance to the CORC.  The inmate does this by filing a Notice of Decision to

Appeal (Form # 2133) with the inmate grievance clerk.  Id. § 701.8(g).  If an inmate is

moved to another facility while the grievance is pending, he is required to mail the signed

appeal back to the IGP Supervisor at the facility where the grievance was originally filed.  Id.

§ 701.6(h)(2).  The Second Circuit has long recognized this procedure as an "available

remedy" for purposes of the PLRA.  See Hall v. County of Saratoga, No. 10-CV-1120

(NAM/CFH), 2013 WL 838284, at *1-*2 (N.D.N.Y. Mar. 6, 2013).

---

[2] The Rules and Regulations are commonly known as Directive 4040, which is
defendants' exhibit 12-E.

## II. Evidentiary Hearing

## A. The Stipulated Facts

The evidentiary hearing was conducted on October 3, 2013. At the commencement of the hearing the parties agree to stipulate to certain facts for purposes of the exhaustion hearing. Hr'g Tr. at 11-12. The parties stipulated, <u>inter</u> <u>alia</u>, that on November 6, 2010 Puga submitted a grievance to the Great Meadow Correctional Facility ("Great Meadow") against defendant corrections officers for allegedly assaulting him on October 29, 2010. <u>Id.</u> at 11. On November 16, 2010 Puga received a notice from the Inmate Grievance Resolution Committee ("IGRC") acknowledging receipt of the grievance. <u>Id.</u> Puga received a letter on December 1, 2010 from the IGP supervisor at Great Meadow advising him that the grievance was still under investigation. <u>Id.</u> The parties agree there is no evidence that Puga received a decision on the grievance.

In early December 2010 Puga was transferred from the Great Meadow to Southport Correctional Facility ("Southport"). Hr'g Tr. at 12. On December 22, 2010 Puga sent a letter to the IGRC at Southport. On December 28, 2010 Puga received a response from the IGP. On that date Puga sent a letter to the Director of the IGP in Albany, New York. On January 12, 2011, Karen Bellamy, Director of the IGP, sent a letter to Puga acknowledging receipt of his correspondence dated December 28, 2010. <u>Id.</u>

On June 28, 2011 Puga sent a letter to S. Woodward, IGP Supervisor at Great Meadow. Woodward responded to Puga by letter dated July 5, 2011. Hr'g Tr. at 12.

6

## B. Burden of Proof

Defendants have pled the affirmative defense that Puga has failed to exhaust his administrative remedies as required by the PLRA. Ans. (Dkt. No. 16). In conducting this hearing, the Second Circuit has set forth a three part test to determine if the exhaustion requirement has been met:

> a court should first consider whether the administrative remedies were in fact available to the prisoner. Second, a court must determine whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. . .Third, a court should examine whether there were special circumstances that excused plaintiff's failure to adhere to the administrative procedural requirements.

Torres v. Anderson, 674 F. Supp. 2d 394, 397-398 (E.D.N.Y. 2009) (quoting Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)) (internal quotation marks and citations omitted).

In following the Hemphill analysis, the burden of proof rests with defendants while plaintiff bears the burden of production as to estoppel and special circumstances. Bailey v. Fortier, No. 09-CV-742 (GLS/DEP), 2012 WL 6935254, at *5-*6 (N.D.N.Y. Oct. 4, 2012) (citations omitted).

## C. The Hearing

Puga does not contend that administrative remedies were not available in this case. Ex. D-12E, DOCCS Directive 4040. Puga did not introduce any evidence that would dispute the existence of an administrative remedy. No defendant has been alleged to have taken any action inhibiting Puga's exhaustion of remedies. The focus of the exhaustion hearing

7

centers on whether Puga availed himself of the proper exhaustion process or if special circumstances existed which excused his failure to exhaust administrative remedies.

On November 6, 2010 Puga filed a grievance at Great Meadow alleging defendants Choto, Perry, and Lemery assaulted him on October 29, 2010.  Hr'g Tr. at 11, Ex. P-1.[3] Puga received a notice dated November 16, 2010 from the Inmate Grievance Resolution Committee ("IGRC") acknowledging the receipt of his grievance.  Hr'g Tr. at 11, Ex. P-2.  By letter dated December 1, 2010, S. Woodward, IGP Supervisor at Great Meadow, advised Puga that his grievance was still being investigated.  Hr'g Tr. at 11, Ex. P-4.  On December 3, 2010 a decision was issued by the Superintendent denying Puga's grievance.  Exs. P-5 & D-10E.  There is no evidence Puga received that decision.  Hr'g Tr. at 11.  Puga did not file an appeal of that decision to the IGRC clerk at the facility as required by Directive 4040.  Id. at 28-29, Ex. D-10E.

In early December 10, 2010, Puga was transferred to the Southport.  Hr'g Tr. at 11-12, 60.  On December 22, 2010 Puga sent a handwritten note to the IGRC at Southport inquiring about the status of the November 6, 2010 grievance.  Id. at 12, Ex. P-7.  By letter dated December 28, 2010 Puga was advised that he was required to inquire about his grievance at the facility where the grievance was filed.  Hr'g Tr. at 12, Ex. P-8.  Puga did not submit an appeal to the IGRC clerk at Great Meadow.  Hr'g Tr. at 28-29.

On December 28, 2010 Puga sent a letter to the Director of the IGP in Albany regarding the status of his grievance.  Ex. P-9.  By letter dated January 12, 2011 Karen Bellamy, Director of the IGP, advised Puga that a decision had been issued on his grievance by the

---

[3] In addition to stipulating to certain facts the parties stipulated to the admission of all corresponding documents regarding the stipulated facts.  Hr'g Tr. at 12.

Superintendent on December 3, 2010 and forwarded to his current facility.  Ex. D-10E.
Puga was further advised that he must submit his grievance or appeal to the IGRC clerk at
the facility.  Ex. D-10E.

On January 20, 2011 Puga filed a complaint in the United States District Court for the
Northern District of New York based on the alleged use of excessive force on October 29,
2010.  Compl. (Dkt. No. 1).  On June 28, 2011 Puga sent a letter to Woodward, IGP
Supervisor at Great Meadow, requesting a response to his grievance.  Ex. P-11.  By letter
dated July 5, 2011 Woodward advised Puga a that Superintendent's decision was sent to
him on December 3, 2010.  Ex. D-14E.

Defendants called Jeffery Hale, Director of the IGP in Albany, as a witness.  Hale
conducted a review of grievances filed by Puga prior to November 10, 2010.  Hr'g Tr. at 31.
Hale testified that on two occasions prior to November 10, 2010 Puga successfully
appealed grievances to his office.  Id.

Hale also testified that Directive 4040 is the policy for the operation of the IGP.  Hr'g Tr.
at 17, Ex. D-12E.  As Puga's grievance involved an assault, it was sent directly to the
Superintendent.  Hr'g Tr. at 31.  Where an inmate does not receive a decision on his
grievance, Directive 4040 provides additional remedies for an inmate to exhaust his
administrative remedies.  Id. at 32.  An inmate:

> can write the Inmate Grievance Program Supervisor to check on
> the status; he could get the grievance response if it was
> responded to.  If it was not responded to, then he could request
> to have the grievance automatically appealed to the Central
> Office Review Committee.  If it was responded to, he can get a
> copy of the response and attempt to file an appeal.

Id.

9

Defendants also called Sergeant Timothy L. Vedder as a witness. Sergeant Vedder has been employed by DOCCS for over thirty-one years. He is presently the IGRC Supervisor at Great Meadow. Hr'g Tr. at 46.

Inmates are advised of the grievance procedure during their orientation at Great Meadow. Hr'g Tr. at 47. During inmate orientation clerks from the IGRC attend the orientation to speak with inmates about the grievance process. There is also an explanation of the grievance process in the manual which inmates receive during orientation. Id.

Sergeant Vedder reviewed the file kept at Great Meadow regarding Puga's grievance. Hr'g Tr. at 49-50, Ex. D-2E. The grievance filed at Great Meadow was assigned grievance number 50, 715-10. Id. The first document in the file is a November 8, 2010 decision from the Superintendent denying Puga's grievance. Hr'g Tr. at 49. The second page is the cover sheet for the grievance from Great Meadow. Id. at 50. The third and fourth pages are the handwritten grievance filed by Puga. Id. at 50, Ex. D-2E. A review of the DOCCS computer files indicates the decision was mailed to Puga at Southport on December 7, 2010. Hr'g Tr. at 52. There is no record at Great Meadow of Puga having filed an appeal of the Superintendent's decision denying his grievance. Id. at 56.

Sergeant Vedder testified that there are provisions which allow the IGP supervisor to allow additional time for inmates who have gone beyond the time frame set forth in the directive to file appeals. Hr'g Tr. at 54. Sergeant Vedder is particularly lenient in situations where an inmate, like Puga, is housed at a different facility. Id. If an inmate's request for additional time to file an appeal is denied he may file a grievance challenging that decision. Id. at 55.

During the hearing defense counsel read portions of the transcript of the deposition of

Puga which was taken on May 3, 2012. During that deposition the following colloquy

occurred regarding the January 11, 2011 letter from Karen Bellamy, Director of IGP (Ex. D-

10E) to Puga:

> Q: And that letter said that a decision was rendered, correct?
> A: Yes. It says they made a decision and they said that on December 3rd that had sent it to me.
> Q: And you were at Southport then?
> A: Yes.
> Q: So – but you – did you say you did not receive that?
> A: I never.
> Q: Did you ask again for a copy?
> A: I asked for a copy from Comstock, no. No. I never asked for another copy. I just let it go. If I put some grievance in at Great Meadow it was never going to get me anyway. This kind of grievance, if it affects the officers, I'm never going to get a decision. It's just not going to get to me. I'm never going to receive it. The only thing I can do is prove that I never got this in my hands.
> Q: Did you write, after this letter of January 12, 2011, did you write to Great Meadow or ask at Southport for a copy of the decision?
> A: No. I let it go. It was – it was a waste of time. It's like something I had to prove in Court.

Hr'g Tr. at 67-68.

Puga testified that he never received a decision on his grievance. Hr'g Tr. at 73. He

wrote letters on December 22, 2010 and December 28, 2010 in order to find out what had

happened to his grievance and to continue the grievance process. Id. at 75. Puga

continued to seek a decision on his grievance by his June 28, 2011 letter to the grievance

program at Southport. Id. at 77, Ex. P-11.

### III. Recommendation

As to the first two prongs of the Hemphill[4] analysis, the Court finds, by a preponderance of the evidence, that an administrative remedy was available.  See supra Part I(B).  The Court further finds that defendants did not forfeit their affirmative defense or inhibit Puga from exhausting his remedies.  There is no evidence that prison officials took any steps to prevent Puga from appealing his grievance determination.  The only factual issue raised by Puga is whether special circumstances were established which excused his failure to exhaust his administrative remedies pursuant to Directive 4040.  See Giano v. Goord, 380 F.3d 670, 678 (2d Cir. 2004) (noting that special circumstances justifying a prisoner's failure to comply with administrative procedural requirements is "determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way."); see also Dabney v. Pegano, No. 10-CV-1109 (GTS/TWD), 2013 WL 5464776, at *7 (N.D.N.Y. Sept. 30, 2013).

Plaintiff contends that "special circumstances" are present in the case as he (1) properly filed a grievance on November 6, 2010 which was acknowledged by the facility; (2) never received a decision on his grievance; (3) sent a letter to the Southport IGRC on December 22, 2010; (4) sent a letter to the Director of the IGP in Albany on December 28, 2010; and (5) sent a letter to S. Woodward, IGP Supervisor at Great Meadow on June 28, 2011.

The parties agree that Puga filed a grievance on November 6, 2010.  Hr'g Tr. at 11-12. Puga contends that he never received a decision on that grievance.  As Puga alleges, he did not receive a decision on his grievance, however, there were other options he could

---

[4] Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004).

pursue to successfully exhaust his administrative remedies. He could have contacted the IGP supervisor at Great Meadow to inquire about the status of his grievance. He did not do this. In the alternative, he could have exhausted his administrative remedies by requesting to have the grievance automatically appealed to the CORC. See N.Y. COMP. CODES R. & REGS. tit. 7 § 701.6(g). The parties agree that Puga did not file an appeal with the CORC.

On December 22, 2010 Puga sent a letter to the IGRC at Southport. Hr'g Tr. at 12, Ex. P. 7. By letter dated December 28, 2010, Puga was advised 'that you have to inquire about grievances with the facility where they were filed." Ex. P-8. Puga never contacted the IGRC at Great Meadow regarding the status of his grievance.

On December 28, 2010 Puga sent a letter to the Director of the IGP in Albany. On January 12, 2011 Karen Bellamy, Director of the IGP, sent a letter to Puga advising him that the Superintendent had issued a decision on his grievance on December 3, 2010. That letter provided, inter alia, "You are advised that you must submit your grievance or appeal directly to the IGRC Clerk at the facility. Therefore, you document is being returned to you and we will not retain a copy in this office." Ex. D-10E. Puga never filed a new grievance or appeal with the IGRC Clerk at Great Meadow. During his deposition Puga testified that he did not write to Great Meadow as "it was a waste of time." Hr'g Tr. at 67-68.

On January 20, 2011 Puga filed the complaint in this action in the Northern District of New York. On June 28, 2011 Puga sent a letter to the grievance program at Southport inquiring about that grievance.

Here, Puga, who had successfully appealed grievances on two prior occasions, had numerous opportunities to exhaust his administrative remedies. Puga became frustrated with the process and chose not to pursue those remedies. Despite Puga's transfer and the

13

multiple letters which he authored, none were sufficient to successfully exhaust his administrative remedies. Moreover, in response to Puga's correspondence, he was directed by multiple parties regarding who to contact in order to continue the grievance process. Therefore, any claims of ignorance regarding the process, even given his transfer to a different facility, are disingenuous. Accordingly, again allocating the burden of proof on the issue of special circumstances to defendants, I conclude that they have demonstrated by a preponderance of the evidence, the absence of any special circumstances that would serve to excuse Puga's failure to exhaust his administrative remedies.

The credible evidence and testimony presented at the exhaustion hearing establishes that (1) Puga failed to exhaust his administrative remedies prior to commencing this action and (2) Puga has offered no special circumstances warranting that he be excused from the PLRA's exhaustion requirement. As such, it is therefore, **RECOMMENDED** that Puga's complaint be **DISMISSED**, based upon the failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).[5]

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. §

_____

[5] Kimberly Finnigan, Esq. of the law firm of Cooper, Erving & Savage was appointed to represent Puga in this action pro bono. The Court wishes to thank Attorney Finnigan for her efforts on behalf of Puga.

14

636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  November 4, 2013
     Albany, New York

*Christian F. Hummel*

Christian F. Hummel
U.S. Magistrate Judge